IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS HART,<br><br>           Plaintiff,<br><br>    vs.<br><br>TUOLUMNE FIRE DISTRICT,<br>JOSEPH TURNER, TONEY POWERS,<br>KENNETH HOCKETT, BRIAN<br>MACHADO,<br><br>           Defendants.<br>                                     / | CASE NO. CV F 11-1272 LJO DLB<br><br>**ORDER ON MOTION TO DISMISS**<br>(Doc. 15) |

By notice filed on May 13, 2011, Defendants Tuolumne Fire District, Joseph Turner, Toney Powers, Kenneth Hockett, and Brian Machado move to dismiss the claims for relief pursuant to Fed.R.Civ.Proc. 12(b)(6). (Doc. 15.) Plaintiff Nicholas Hart filed an opposition on July 8, 2011. Defendants filed a reply brief on July 15, 2011. After the motion was submitted on the pleadings without oral argument pursuant to Local Rule 230(g), the case was reassigned to the undersigned District Judge on August 3, 2011. Having considered the moving, opposition and reply papers, as well as the Court's file, the Court issues the following order.

**FACTUAL BACKGROUND**

Plaintiff Nicholas Hart ("plaintiff") was a firefighter with defendant Tuolumne Fire District ("TFD") from February 2009 to January 2011. Defendant Joseph Turner was the Chairman of the Board of Directors for TFD, and defendant Kenneth Hockett succeeded him as the Chairman of the Board in August 2010. Defendant Brian Machado was a member of the Board of Directors. (Doc. 10, FAC ¶6.) Defendant Toney Powers is an employee of TFD and plaintiff's supervisor. (Doc. 10, FAC ¶4.)

1  Plaintiff alleges he worked with his supervisor, Benjamin Oyarzo, to implement an annexation
2  plan. The plan was to annex portions of Tuolumne County land into the jurisdiction of TFD, which
3  would have increased Defendant TFD's jurisdiction from approximately 1,200 acres of territory to nearly
4  70,000 acres. The result would have increased TFD's annual property tax revenue and reduced the
5  County's annual property tax revenue in a corresponding amount. (Doc. 10, FAC ¶16.)

  Plaintiff alleges that this annexation plan angered the County officials, and plaintiff was
  retaliated against within TFD for supporting and assisting in attempting to get this plan implemented.
  He alleges he was retaliated against because he worked with Benjamin Oyarzo who was also retaliated
  against by defendants.[1] The retaliation against plaintiff consisted of being verbally taunted by Turner,
  and other firefighters and "ignored and physically mocked him during training sessions," increasing
  scrutiny of his work and transferring his responsibilities to interns. (Doc. 10, FAC ¶22.) He alleges his
  colleagues refused to speak to him, falsely accused him of not performing his duties, and improperly
  added documents to his employment file. (Doc. 10, FAC ¶26.)

  Plaintiff reported safety violations to defendant Hockett. Plaintiff was the only firefighting
  personnel assigned to the "B" shift, which was unsafe for a firefighter to work alone, operate the
  equipment alone or enter a burning building alone. (Doc. 10, FAC ¶29.) Defendant Hockett then
  instituted a disciplinary investigation against Plaintiff and issued a disciplinary letter to plaintiff accusing
  him of insubordination. (Doc. 10, FAC ¶¶ 31-32.) Hockett instituted a second disciplinary investigating
  and issued a formal warning related to plaintiff's attendance at a funeral.

  A new Board of Directors for TFD met on December 13, 2010. At the meeting, defendant
  Machado brought a motion to lay off the least senior firefighter and reclassify the remaining firefighting
  staff as Engineers with a pay rate of $12 per hour. (Doc. 10, FAC ¶40.) The Board's vote resulted in
  the following:

  a.  Mr. HART was terminated, effective January 1, 2011.
  b.  Mr. Oyarzo was demoted one rank and his pay reduced 43 percent. Mr. Oyarzo refused

---

[1] Plaintiff also alleges that Oyarzo was retaliated against for disciplining all members of Defendant TFD's firefighting staff for safety violations, including fire engine safety issues that risked the safety of the public and the firefighting staff, and failures in self-contained breathing apparatus masks used for respiratory protection by the firefighters, and reported the violations to the Board of Supervisors. (Doc. 10, FAC ¶20.)

2

1         the demotion and was terminated, effective January 1, 2011.

2    c.   Defendant POWERS remained at the same rank, and his pay was reduced 25 percent.

3         Defendant POWERS remained employed with Defendant TFD.

4    d.   Mr. Ohler was promoted one rank and his pay remained unchanged. Mr. Ohler remained

5         employed with Defendant TFD.

6    e.   Mr. Podesta was promoted one rank and his pay remained unchanged. Mr. Podesta

7         remained employed with Defendant TFD.

8    As a result of the above acts, plaintiff alleges the following claims:

9    1.   Violation of the Fair Labor Standards Act (29 U.S.C. §201) against TFD

10    2.   Violation of the First Amendment - Unlawful Deterrence against all defendants

11    3.   Violation of the First Amendment - Retaliation against all defendants

12    4.   Violation of Due Process against TFD

13    5.   Violation of Civil Rights, 42 U.S.C. §1983 against all defendants

14    6.   Retaliation for Reporting Safety Violations (Cal. Lab. Code §6310) against all defendants

15    7.   Retaliation for Disclosing Statutory Violations (Cal. Lab.Code §1102.5) against all

16         defendants

17    8.   Violation of Firefighter's Procedural Bill of Rights (Cal.Gov. Code §3250) against TFD

18    9.   Intentional Infliction of Emotional Distress against defendants Turner, Powers, Hocket

19         and Machado

20                 **ANALYSIS AND DISCUSSION**

21 **A.**   **Standard for Motion to Dismiss**

22    A motion to dismiss pursuant to Fed R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the

23 pleadings set forth in the complaint. A Fed. R. Civ. P. 12(b)(6) dismissal is proper where there is either

24 a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal

25 theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion

26 to dismiss for failure to state a claim, the court generally accepts as true the allegations of the complaint

27 in question, construes the pleading in the light most favorable to the party opposing the motion, and

28 resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir.

2008); *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007). A claim has facial plausibility,"when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937 (2009). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.2d 962, 969 (9th Cir. 2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969. If a plaintiff fails to state a claim, a court need not permit an attempt to amend a complaint if "it determines that the pleading could not possibly be cured by allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

**B.   Fair Labor Standards Act Exemptions**

Defendants argue that plaintiff's first claim under the Fair Labor Standards Act ("FLSA") is barred because plaintiff was an exempt employee. The FLSA exempts public employees who are in fire protection activities.

Plaintiff argues that the FLSA does not provide an exemption for the complete failure to pay an employee for work performed. 29 U.S.C. §207(a). Plaintiff further argues that only a partial exemption applies; when a firefighter works in an excess number of hours, the FLSA exemption does not apply. Plaintiff argues that he alleged facts to establish he exceeded the threshold hours.

The FLSA provides in pertinent part:

> "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. §207(a).

Unless an exemption applies, the FLSA requires that employees be compensated at a rate of one-and-one-half times their hourly rate for all hours worked in excess of forty hours in one week. 29 U.S.C. § 207(a).

The FLSA also provides an exemption for firefighters. Under the exemption, the overtime provisions of the FLSA are not applicable to any "employee in fire protection activities," unless he or she works in excess of 212 hours in a work period of 28 consecutive days (an average of 53 hours per week). See 29 U.S.C. § 207(k); 29 C.F.R. § 553.230.

Plaintiff's allegations do not satisfy pleading requirements that he would be protected by the FLSA. Given the clear statutory exemption, plaintiff must plead facts from which it is plausible that he would not be exempt under the FLSA. Plaintiff has failed to allege that he worked in excess of the hours for which he would not be exempt. Plaintiff alleges that firefighting staff members "were scheduled to work one 48-hour shift every six days and were compensated on an hourly basis." Plaintiff alleges that he "regularly worked hours for which he was not compensated from approximately June 1, 2009 through June 8, 2010." (Doc. 10, FAC ¶¶ 13-14.) Plaintiff does not allege that he met the requirements, as a fire fighter, for which he would be entitled to compensation. Leave to amend will be granted.

**C.  First Amendment Protections**

Defendants argue that plaintiff's second and third claims for violation of the First Amendment fail because plaintiff did not engage in political activity protected by the First Amendment.

Plaintiff alleges he engaged in protected activity regarding matters of public interest when he petitioned the government of the County of Tuolumne to allow the annexation of portions of County land into Defendant TFD's territory. (Doc. 10, FAC ¶ 17.)

In order to demonstrate a First Amendment violation, a plaintiff must allege that "by his actions [the defendant] deterred or chilled [the plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the defendant's] conduct." *Mendocino Environmental Center v. Mendocino*

*County,* 192 F.3d 1283, 1300 (9th Cir. 1999). Intent to inhibit speech "is an element of the claim." *Id.* at 1301. The goal is to prevent, or redress, actions by a government official that chill the exercise of protected First Amendment rights. *Coszalter v. City of Salem*, 320 F.3d 968, 974-75 (9th Cir.2003).

The governmental entity may not abuse its position as employer to stifle "the First Amendment rights [its employees] would otherwise enjoy as citizens to comment on matters of public interest." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731 (1968); *see Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009) (stating a five step series of questions to a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer.) Speech made pursuant to an employment duty can be a matter of public concern. See, e.g., *Pool v. VanRheen*, 297 F.3d 899, 908 (9th Cir. 2002). But, among other things, the plaintiff bears the burden of showing the speech was spoken in the capacity of a private citizen and not a public employee. *Eng*, 552 F.3d at 1071. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Huppert v. City of Pittsburg*, 574 F.3d 696, 702 (9th Cir. 2009). "Statements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.' " *Eng*, 552 F.3d at 1071.

Plaintiff's allegations are inconsistent with plaintiff's position in his opposition that he was speaking as a private citizen. In his opposition, plaintiff argues that as a resident of Tuolumne County he had a personal interest regarding annexation, funding and collection of property taxes. (Doc. 18, Opposition p.6.) By inference, his position is that as a private citizen he was petitioning the County for annexation of land into the TFD's jurisdiction. In his complaint, however, he states that his petition for annexation was undertaken as part of his official duties:

> 16. In approximately March 2009, Mr. HART's supervisor, Benjamin Oyarzo, implemented a plan to annex portions of Tuolumne County land into the jurisdiction of Defendant TFD. The annexation would have increased defendant TFD's jurisdiction from approximately 1,200 acres of territory to nearly 70,000 acres. The annexation also would have increased Defendant TFD's annual property tax revenue by $140,000 and reduced the County's annual property tax revenue by an equal amount.
>
> 17. In approximately June 2009, Mr. HART began working with Mr. Oyarzo to

|   |   |
|---|---|
| 1 | petition the county for the annexation of county lands. **As part of this effort, Mr. HART regularly met with land use planners and county representatives**, and assisted with the preparation and filing of the petition to annex land from the County. (Emphasis added.) |
| 2 |   |
| 3 |   |

4  These allegations imply that Mr. Oyarzo was working as part of his official duties to have land
5  annexed, and that plaintiff worked with his supervisor towards implementation of annexation for
6  official purposes.

7  These allegations are insufficient to establish a plausible claim that plaintiff's First
8  Amendment rights, as a private citizen, were violated for speaking about annexation. Nonetheless,
9  plaintiff has requested leave to amend the complaint to assert additional facts which may bring his
10 claim within First Amendment protections. Leave will be granted.

11 **D.   Due Process Guarantees in Public Employment**

12 Plaintiff argues that he was a public employee who was entitled to due process before he was
13 terminated. He alleges that the TFD Board of Directors voted to terminate his employment on
14 December 13, 2010, effective January 1, 2011. He alleges he was not provided with notice of the
15 action before the December 13, 2010 board meeting and was not provided with the opportunity to
16 defend himself before being deprived of his employment. (Doc. 10, FAC ¶¶40-41.)

17 Defendants argue that plaintiff does not have a property interest in continued employment.
18 Defendants argue that plaintiff fails to allege any entitlement to continued employment, such as by
19 contract, tenure or that he could be terminated only for cause.

20 To have a property interest in a governmental benefit, including employment, an individual
21 must have an entitlement to the benefit. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701,
22 2709 (1972). Such entitlements are created by "rules or understandings" that stem from an
23 independent source, such as relevant statutes, regulations, and ordinances, or express or implied
24 contracts. *Id*. ("the procedural due process protections of the Fourteenth Amendment apply only to
25 deprivations of property interests, the existence and dimensions of which 'are defined by existing
26 rules or understandings that stem from an independent source such as state law.'"). Indeed, to
27 determine whether a protected property interest exists in a given instance, courts look to state law.
28 *WMX Techs, Inc. v. Miller*, 80 F.3d 1315, 1318 (9th Cir. 1996) ("We look to state law to define the

1  dimension of a protected property interest.") Property rights cannot be created by a person's
2  unilateral needs. To have a property interest in a benefit, a person must clearly have more than an
3  abstract need or desire for it, or a unilateral expectation of it. Instead, the person must have a
4  legitimate claim of entitlement to the benefit. *See*, *generally*, *Board of Regents of State Colleges v.*
5  *Roth*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972).  A plaintiff must establish a legitimate
6  entitlement to a liberty or property interest, rather than a mere expectancy. *See generally Board of*
7  *Regents v. Roth*, 408 U.S. at 577 (To have a property interest in a benefit, a person must have "a
8  legitimate claim of entitlement," not a mere "unilateral expectation.").

9  The presumption in California is that all employees are at-will employees.  Lab.Code §2922.
10  At-will employees are those who can be fired with or without cause, subject only to limits imposed
11  by public policy. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 665, 254 Cal.Rptr. 211 (1988).  If
12  an employee is one who can be fired with or without cause, that employee can not have an
13  expectation of continued employment.  "A mere expectation that employment will continue does not
14  create a property interest. If under state law, employment is at-will, then the claimant has no property
15  interest in the job." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir.1993) (internal
16  citations omitted).  "There is no right [solely] under the substantive due process clause to be
17  terminable only for cause." *Id.* at 902 n. 1.  A public employee in California who can establish the
18  existence of rules and understandings, promulgated and fostered by state officials, that justify his
19  legitimate claim to continued employment absent sufficient cause, has a property interest in such
20  continued employment within the purview of the due process clause. *Skelly v. State Personnel*
21  *Board*, 15 Cal.3d 194, 207, 124 Cal.Rptr. 14, 23, 539 P.2d 774 (1975) (state civil servant who
22  achieved "permanent employee" status had property interest protected by due process).

23  Here, the allegations do not state whether plaintiff had any expectation other than an at-will
24  status.  In the FAC, plaintiff alleges he was hired "as a full-time employee of defendant TFD" and
25  that he was terminated by the Board of Directors.  (Doc. 10, FAC ¶12, 40-41.)  Plaintiff is required
26  to plead enough facts "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at
27  555.  Plaintiff fails to allege any facts which raise his employment beyond mere at-will status.
28  Therefore, the motion will be granted.

Defendants also argue that there was no deprivation of a property right because the face of the complaint alleges that plaintiff was laid off as the least senior firefighter. Defendants note that the FAC alleges that Board of Directors voted, out of budgetary considerations, to eliminate the position and reduce other firefighters' pay. (Doc. 15, Moving Papers p. 6, citing FAC ¶¶40-41.)

Here, the Court cannot reach the issue of deprivation of the right. Whether due process was required depends upon whether plaintiff had he right to continued employment. Since the Court has granted leave to amend, the Court does not reach this issue.

**E.      Immunity of the Individuals for §1983 Violations**

### 1.      Qualified Immunity

Defendants argue that the individual defendants are immune from liability. They argue they are liable for their decision to eliminate plaintiff's position constituted a discretionary function. Budget cuts affecting personnel were considered.[2]

Plaintiff argues that these defendants improperly retaliated against him for exercise of his First Amendment Right, that defendants improperly deprived him of his continued employment and improperly instituted employment disciplinary actions against him. (Doc. 18, Opposition p.7.)

In deciding whether to grant qualified immunity, a court must determine (a) whether the alleged facts make out a constitutional violation, and (b) whether the constitutional right at issue was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). A right is clearly established if it would be clear to a reasonable official that his conduct was unlawful. *Id.* at 202. A court may exercise its discretion as to the order in which it addresses each prong. *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles*, - F.3d -, 2011 WL 3524129, 7 (9th Cir. 2011). The question of immunity generally is not one for the jury. Qualified immunity is an immunity from suit rather than a mere defense to liability. *Siegert v. Gilley*, 500 U.S. 226, 233, 111 S.Ct. 1789 (1991). "Immunity ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 228, 112 S.Ct. 534 (1991) (citation omitted). However, if a genuine issue of material fact exists regarding the circumstances under which the

---

[2] Defendants do not move for dismissal of the state law actions based upon immunity in Cal.Gov. Code §820.2 (immunity for discretionary acts).

employee acted, then the court should make the determination after the facts have been developed at trial. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir.1993).

Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). Qualified immunity thus serves to protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

Voting on whether to lay off plaintiff is purely a discretionary function. *See Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 973 (9th Cir.1996) (concluding that discretionary functions, for purposes of qualified immunity, include "demoting, evaluating and disciplining" a college professor), *cert. denied*, 520 U.S. 1140 (1997). In *Cohen,* the court held the college officials who voted to discipline the professor were entitled to qualified immunity because the legal issues were not "readily discernable and the appropriate conclusion to each [was] not so clear that the officials should have known that their actions violated Cohen's rights*."* 92 F.3d at 973. The decision made by the members of the Board were discretionary and subject to a claim of qualified immunity. The intent or motives of the members of the Board are not relevant. The relevant inquiry under the second prong is wholly objective; an official's subjective belief as to the lawfulness of his conduct is irrelevant. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

Here, the Court has granted leave to amend as whether plaintiff has a protected property right in continued employment. The Court does not yet have the confines of the right to continued employment as plaintiff claims he possessed. Thus, for the purposes of qualified immunity, without the right being defined which is purportedly denied, the Court cannot rule on the qualified immunity of the individuals.

**2.   Absolute Immunity**

Even if the Board of Director members were not entitled to qualified immunity, they would be entitled to absolute immunity for their legislative acts. Local legislators are absolutely immune from liability under § 1983 for their legislative acts. *See Bogan v. Scott–Harris*, 523 U.S. 44, 49, 118 S.Ct. 966 (1998). But "not all governmental acts by ... a local legislature[ ] are necessarily

legislative in nature." *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir.1984), *cert. denied*, 471 U.S. 1054 (1985). General legislative acts that have an inordinate impact on one individual do not necessarily deprive legislators of absolute immunity. *See Bogan*, 523 U.S. at 54-56, 118 S.Ct. 966 (granting absolute immunity to legislators who voted to eliminate one position from city government). "Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan*, 523 U.S. at 54. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Bogan*, 523 U.S. at 54, 118 S.Ct. 966. In *Bogan*, the Court held that local legislators who voted to eliminate a department of local government were absolutely immune for their actions, notwithstanding that their votes were allegedly due to their racially discriminatory animus and desire to retaliate against the department head for her exercise of First Amendment rights. The Court noted that the legislators' actions were legislative in nature, and rejected the lower courts' reasoning that the measure passed by the city council was an individually targeted administrative act, rather than a legislative elimination of a position. The Court concluded that whether an act is legislative turns on the nature of the act, rather than the motive of the actor.

The Ninth Circuit considers four factors in determining whether an act is legislative in its character and effect: "(1) whether the act involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation. *Community House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 960 (9th Cir. 2010). The first two factors are largely related, as are the last two factors, and they are not mutually exclusive. *Community House*, 623 at 960.

Here, "stripped of all considerations of intent and motive," the individuals' action in voting to release plaintiff from employment was legislative. *See Bogan*, 523 U.S. at 55. The act of bringing a motion and voting on the motion are part of the formal legislative duties of the Board for TFD and bears the hall marks of traditional legislation. The individuals' conduct also is a formulation of policy, as the motion and vote named specific fire personnel and impacted the entirety of the TFD personnel. This court does not inquire into the motives of legislative acts. "[I]t simply is "not

consonant with our scheme of government for a court to inquire into the motives of legislators." *Bogan*, 523 U.S. at 54-55. The acts alleged in paragraphs 40-41 are formal legislative functions and are entitled to absolute immunity. Therefore, to the extent plaintiff seeks liability against the individuals for any legislative act, including the motion and the subsequent vote (regardless of motive), the individuals are immune. (See FAC ¶40-41.)

### F.     State Law Retaliation Claims

Plaintiff alleges two claims of retaliation under California law. Plaintiff alleges retaliation in violation of Labor Code §6310 and Labor Code §1105.2 for reporting safety violations and for refusing to retaliate against Mr. Oyarzo who reported unsafe working conditions. (Doc. 10, FAC ¶69-73.)

Cal.Lab. Code §6310 states in relevant part:

> b) Any employee who is discharged, threatened with discharge, demoted, suspended, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because the employee has made a bona fide oral or written complaint . . . shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by the acts of the employer.

Plaintiff also alleges violation of Labor Code §1102.5 which states:

> b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, . . .
>
> (c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, . . .

Defendants argue that plaintiff cannot show that an adverse employment action was taken against him. Defendants argue that plaintiff was laid off due to budgetary considerations and not terminated. Further, defendants argue that the Labor Code claims are barred against the individual defendants, Turner, Powers, Hockett and Machado because they are not the "employer."

The definition of an "employer" for these claims is defined in Labor Code §3300:

> b) Each county, city, district, and all public and quasi public corporations and public agencies therein.

        (c) Every person including any public service corporation, which has any natural person in service.

See Lab.Code §3300, 6304.

In multiple labor and employment contexts, the California Supreme Court has rejected efforts to expand the employer liability to include individual corporate agents. In *Reynolds v. Bement*, 36 Cal.4th 1075, 1087-88, 116 P.3d 1162 (2005), the court held corporate agents acting within the scope of their agency are not personally liable for the corporate employer's failure to pay its employees' wages in violation of Labor Code Wage Order. 1087-88. *Id.* (*abrogated on other grounds by Martinez v. Combs*, 49 Cal.4th 35, 63-66, 109 Cal.Rptr.3d 514 (2010).) In *Reno v. Baird*, 18 Cal.4th 640, 76 Cal.Rptr.2d 499, the California Supreme Court held that, although the employer may be liable for unlawful discrimination, individuals working for the employer, including supervisors, are not personally liable for that discrimination. In *Jones v. Lodge at Torrey Pines Partnership*, 42 Cal.4th 1158, 72 Cal. Rptr. 3d 624 (2008), the California Supreme Court overruled previous cases which had held individual supervisors liable for retaliation. The Supreme Court said that, like discrimination, non-employer individuals are not personally liable for retaliation. *Id.* at 1167.

The enforcement provision of Section 6310(b) is directed at an employee who has suffered an adverse employment action "**by his or her employer.**" The enforcement is against the employer, and is not against another employee or a supervisor. Likewise, Labor Code §1102.5 provides that "an employer" is liable for prohibited conduct. No authority provided by plaintiff holds that the definition of employer encompasses supervisory personnel. Indeed, as the above California Supreme Court authority shows, the same term in similar labor contexts excludes supervisory personnel. Therefore, the individual defendants cannot be sued for retaliation under the Labor Code §6310 and 1102.5 because they are not "employers."

**G.   "Legitimate Governmental Purpose" is a Factual Issue**

Defendants argue that the Due Process claim and the Retaliation claims should be dismissed because the defendants acted with a rational basis. Defendants argue that they had a legitimate governmental purpose to reduce payroll expenditures and control the TFD budget.

Plaintiff argues that whether defendants acted with a proper motive is a disputed fact and cannot be resolved in this motion.

The Court agrees. Plaintiff alleges he was terminated, not laid off, for reporting safety violation and for internal political reasons. The Court accepts as true the allegations of the complaint and construes the pleading in the light most favorable to the party opposing the motion. *Lazy Y. Ranch,* 546 F.3d at 588. Whether these actions were the motivating force his plaintiff's severance from TFD or some other governmental reason will be based upon facts not currently before this Court.

### H. Intentional Infliction of Emotional Distress and Exclusive Remedies

Defendants argue that plaintiff's allegations arise from his employment relationship and are therefore barred by the exclusive remedy of the California Worker's Compensation Act.[3] (Doc. 15-1, Moving papers p.11.)

Plaintiff argues that his intentional infliction of emotional distress ("IIED") claim is not barred because he has alleged a fundamental public policy violation of retaliation for complaining about safety concerns, citing *De Ruiz v. Courtyard Management Corp.*, 2006 WL 2053505 (N.D.Cal. 2006). Defendants do not address this argument in their reply.

As a general rule, the Workers' Compensation Act provides the exclusive remedy against employers for all injuries arising out of and in the course of employment. Lab. Code §§3600. The Act will not preempt an employee's IIED claim where an employer's conduct contravenes fundamental public policy. *Livitsanos v.Super. Ct.*, 2 Cal.4th 744, 752-54 (1992). An employer's decision to discharge an employee in violation of fundamental policy cannot be considered a normal

---

[3] In their reply, defendants argue that this claim also fails for failure to allege conduct which is "extreme and outrageous." (Doc. 19, Reply p. 7.) The elements of a prima facie case of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) intent to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendants' outrageous conduct. *Cervantez v. J. C. Penney Co.*, 24 Cal.3d 579, 583, 156 Cal.Rptr. 198 (1979), *superseded by statute as stated in Melendez v. City of Los Angeles*, 63 Cal.App.4th 1, 73 Cal.Rptr.2d 469 (1998). To satisfy the element of "extreme and outrageous conduct," plaintiff must allege facts showing that defendants' conduct was "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Ricard v. Pacific Indemnity Co.*, 132 Cal.App.3d 886, 895, 183 Cal.Rptr. 502 (1982). This argument was not raised in the moving papers and the court will not consider it for the first time in a reply brief. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) 9court need not consider arguments raised for the first time in a reply brief). Nonetheless, the court notes, in *dictum*, that the facts as plead fail to show extreme and outrageous conduct.

part of the employment relationship, and does not fall within the purview of the Act. *De Ruiz v. Courtyard Management Corp.*, 2006 WL 2053505, 2. In *De Ruiz*, the court, citing California authority, held that the exclusive remedy provisions of the Workers' Compensation Act do not bar an intentional infliction claims where defendant violated a public policy when he retaliated against an employee who had reported a health code violation.

The Workers' Compensation Act imposes liability on an employer for any injury "arising out of and in the course of" an employee's employment. *See Saala v. McFarland*, 63 Cal.2d 124, 130 (1965). Thus, where an injury is causally related to employment and is sustained during the "time and place contemplated by the employment," an employer must compensate the employee, *McIvor v. Savage*, 220 Cal.App.2d 128, 134 (1963), even if the injuries are caused by the act or omission of a co-employee. See Cal. Lab.Code § 3601. If a coemployee injures a fellow worker while the coemployee is "acting within the scope of his or her employment," the coemployee is immune from liability and workers' compensation provides the injured employee's exclusive remedy. Cal. Lab.Code § 3601. *Hendy v. Losse*, 54 Cal.3d 723, 729-730 (1991). As *Hendy* explains:

> "'[T]he purpose of section 3601 is to make workmen's compensation the exclusive remedy of an injured workman against his employer. That purpose would be defeated if a right of action existed against a fellow employee acting in the scope of his employment in such a way that the fellow employee's negligence could be imputed to the employer. For that reason workmen's compensation was also made the exclusive remedy against a fellow workman 'acting within the scope of his employment.'"

*Id.* at 740. Under Cal. Lab.Code § 3601, whether a coemployee was acting within the "scope of his or her employment" at the time of a given act or omission is determined by whether his or her activity was foreseeable. *See Brittell v. Young*, 90 Cal.App.3d 400, 406 (1979). California law provides that an activity is foreseeable in this context if the "[co]employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Rodgers v. Kemper Constr. Co.*, 50 Cal.App.3d 608, 619 (1975).

Plaintiff argues that the individual defendants were acting outside the scope of their employment, and therefore, their conduct falls outside the exclusive remedies of workers' compensation. Plaintiff argues that he was threatened with retaliation if he did not cooperate with efforts to eliminate another employee. (Doc. 19, FAC ¶22-23.)

Arguably, the defendants acted outside the scope of their employment. Retaliation against an employee for protected conduct is outside the scope of employment. Nonetheless, the Court will grant the motion, but with leave to amend. The Court finds that the allegations are inadequately defined at to each defendant's conduct which is allegedly outside the scope of the employment and conduct which is extreme and outrageous. Plaintiff alleges: "In committing the acts and omissions alleged herein, Defendants Turner, Powers, Hockett and Machado engaged in extreme and outrageous conduct with the intent to cause, or reckless disregard of the probablity of causing emotional distress." (Doc. 10, FAC ¶81.)

The allegations as to the wrongful conduct of each of the defendants are factually insufficient. The allegations fail to identify the conduct by each of the defendants for which plaintiffs seeks to hold them liable. The allegations fail to identify the wrongful conduct by each defendant, other than Defendant Powers. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1948-49 ("Plaintiff's amended complaint should be brief, Fed.R.Civ.P. 8(a), but must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights"). Plaintiffs must allege factually explicit wrongful conduct as to each defendant. Accordingly, the motion will be granted with leave to amend consistent with this order.

**J.     Leave to Amend**

Plaintiff requests leave to amend. Leave to amend is freely given under the Rule 15. Pursuant to Fed. R. Civ. P. 15, this Court "should freely give leave when just so requires." A proper complaint states clearly how each and every defendant is alleged to have violated plaintiffs' legal rights. Wholesale "everyone did everything" fails to comply with the Rules.

**CONCLUSION**

For the foregoing reasons, the Court ORDERS as follows:

1. The motion to dismiss is GRANTED as to the First Cause of Action for Violation of the Fair Labor Standards Act;

2. The motion to dismiss is GRANTED as to the Second and Third Causes of Action for Violation of the First Amendment;

3. The motion to dismiss is GRANTED as to the Fourth Cause of Action for Violation of Due Process;

4. The motion to dismiss is GRANTED as to defendant Tuolumne Fire District as to the Fifth Cause of Action for Violation of Civil Rights;

5. The motion to dismiss is GRANTED on the Fifth Cause of Action for Violation of Civil Rights against defendants Turner, Powers, Hockett and Machado as to their legislative acts without leave to amend;

6. The motion to dismiss is GRANTED on the Sixth and Seventh causes of action against defendants Turner, Powers, Hockett and Machado without leave to amend.

7. The motion to dismiss is GRANTED on the Ninth Cause of Action for Intentional Infliction of Emotional Distress.

Plaintiff shall have 20 days from the date of service of this order to file an amended complaint.

IT IS SO ORDERED.

**Dated:   August 30, 2011**                              /s/ Lawrence J. O'Neill
                                                          UNITED STATES DISTRICT JUDGE